1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ESMERALDA VIDAL, | ) | 1:06-cv-001624-SMS |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | DECISION AND ORDER DENYING |
| | ) | PLAINTIFF'S SOCIAL SECURITY |
| MICHAEL J. ASTRUE, | ) | COMPLAINT (DOC. 1) |
| Commissioner of Social | ) | |
| Security, | ) | ORDER DIRECTING THE ENTRY OF |
| | ) | JUDGMENT FOR DEFENDANT MICHAEL J. |
| Defendant. | ) | ASTRUE, COMMISSIONER OF SOCIAL |
| | ) | SECURITY, AND AGAINST PLAINTIFF |
| | ) | ESMERALDA VIDAL |

17        Plaintiff is proceeding in forma pauperis and with counsel

18 against the Commissioner of Social Security (Commissioner).

19 Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks

20 judicial review of a final decision of the Commissioner denying

21 an application for Supplemental Security Income (SSI) benefits

22 under Title XVI of the Social Security Act (the Act). Pursuant to

23 28 U.S.C. § 636(c)(1), the parties have consented to the

24 jurisdiction of the Magistrate Judge to conduct all proceedings

25 in this matter, including ordering the entry of final judgment.[1]

26 The matter is currently before the Court on the parties' briefs,

27 ────────────

28        [1] The Honorable Oliver W. Wanger ordered the case assigned to the undersigned Magistrate Judge for all purposes on February 13, 2007.

which have been submitted without oral argument to the Honorable
Sandra M. Snyder, United States Magistrate Judge.

II. <u>Procedural History</u>

On October 21, 2003, Plaintiff applied for SSI with a
protective filing date of September 25, 2003, alleging disability
since September 19, 2002, due to type 2 diabetes with high sugar,
kidney pains, and her lower back. (A.R. 275-78.)[2] After
Plaintiff's claim was denied initially and on reconsideration,
Plaintiff appeared at a hearing before the Honorable Bert C.
Hoffman, Administrative Law Judge (ALJ) of the Social Security
Administration (SSA), on December 6, 2005. (A.R. 258-61, 264-69,
16.) Plaintiff appeared with an attorney and testified. On March
29, 2006, the ALJ denied Plaintiff's application for benefits.
(<u>Id.</u> at 13-22.) Plaintiff appealed the ALJ's decision to the
Appeals Council. After the Appeals Council denied Plaintiff's
request for review on September 14, 2006, Plaintiff filed the
complaint in this action on November 9, 2006. (<u>Id.</u> at 7-9.)
Briefing commenced on June 11, 2007, and was completed on July 9,
2007, with the filing of Defendant's brief in opposition.

III. <u>Standard and Scope of Review</u>

Congress has provided a limited scope of judicial review of
the Commissioner's decision to deny benefits under the Act. In
reviewing findings of fact with respect to such determinations,
the Court must determine whether the decision of the Commissioner
is supported by substantial evidence. 42 U.S.C. § 405(g).

---

[2]Plaintiff had filed a previous application based on disability on December 18, 1997, which was denied by a post-hearing decision dated August 22, 2000. (A.R. 74-77, 232-42.) It does not appear that in the later decision presently under review, the ALJ applied any continuing presumption of non-disability. (A.R. 16-22.)

1  Substantial evidence means "more than a mere scintilla,"
2  Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a
3  preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10
4  (9th Cir. 1975). It is "such relevant evidence as a reasonable
5  mind might accept as adequate to support a conclusion."
6  Richardson, 402 U.S. at 401. The Court must consider the record
7  as a whole, weighing both the evidence that supports and the
8  evidence that detracts from the Commissioner's conclusion; it may
9  not simply isolate a portion of evidence that supports the
10 decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.
11 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  It
12 is immaterial that the evidence would support a finding contrary
13 to that reached by the Commissioner; the determination of the
14 Commissioner as to a factual matter will stand if supported by
15 substantial evidence because it is the Commissioner's job, and
16 not the Court's, to resolve conflicts in the evidence. Sorenson
17 v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

18      In weighing the evidence and making findings, the
19 Commissioner must apply the proper legal standards. Burkhart v.
20 Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must
21 review the whole record and uphold the Commissioner's
22 determination that the claimant is not disabled if the
23 Commissioner applied the proper legal standards, and if the
24 Commissioner's findings are supported by substantial evidence.
25 See, Sanchez v. Secretary of Health and Human Services, 812 F.2d
26 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If
27 the Court concludes that the ALJ did not use the proper legal
28 standard, the matter will be remanded to permit application of

3

1 the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

2 Cir. 1987).

3       III. Disability

4       In order to qualify for benefits, a claimant must establish

5 that she is unable to engage in substantial gainful activity due

6 to a medically determinable physical or mental impairment which

7 has lasted or can be expected to last for a continuous period of

8 not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A

9 claimant must demonstrate a physical or mental impairment of such

10 severity that the claimant is not only unable to do the

11 claimant's previous work, but cannot, considering age, education,

12 and work experience, engage in any other kind of substantial

13 gainful work which exists in the national economy. 42 U.S.C.

14 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th

15 Cir. 1989). The burden of establishing a disability is initially

16 on the claimant, who must prove that the claimant is unable to

17 return to his or her former type of work; the burden then shifts

18 to the Commissioner to identify other jobs that the claimant is

19 capable of performing considering the claimant's residual

20 functional capacity, as well as her age, education and last

21 fifteen years of work experience. Terry v. Sullivan, 903 F.2d

22 1273, 1275 (9th Cir. 1990).

23       The regulations provide that the ALJ must make specific

24 sequential determinations in the process of evaluating a

25 disability: 1) whether the applicant engaged in substantial

26 gainful activity since the alleged date of the onset of the

27 impairment, 2) whether solely on the basis of the medical

28 evidence the claimed impairment is severe, that is, of a

4

magnitude sufficient to limit significantly the individual's
physical or mental ability to do basic work activities; 3)
whether solely on the basis of medical evidence the impairment
equals or exceeds in severity certain impairments described in
Appendix I of the regulations; 4) whether the applicant has
sufficient residual functional capacity, defined as what an
individual can still do despite limitations, to perform the
applicant's past work; and 5) whether on the basis of the
applicant's age, education, work experience, and residual
functional capacity, the applicant can perform any other gainful
and substantial work within the economy. See 20 C.F.R. § 416.920.[3]

Here, the ALJ concluded that Plaintiff had severe
impairments of diabetes mellitus, morbid obesity, low back pain,
a depression disorder, and post-traumatic stress disorder which
did not meet or medically equal a listed impairment; Plaintiff
retained the residual functional capacity (RFC) to perform a wide
range of simple, repetitive light work (lifting and carrying no
more than twenty pounds occasionally or ten pounds frequently,
and standing, walking, or sitting for no more than about six
hours of an eight-hour workday), with only occasional stooping or
climbing of ladders, ropes, and scaffolding. Considering
Plaintiff's age, education, and work experience, and using Rule
202.17 as a framework and Soc. Sec. Rulings 83-14 and 85-15 as
guides in decision making, the ALJ concluded that there were
sufficient jobs existing in the national economy that Plaintiff
remained capable of performing; therefore, Plaintiff was not

---

[3] All references to the Code of Federal Regulations are to the 2006 version unless otherwise stated.

disabled during the period beginning September 25, 2003, and continuing through the date of decision. (A.R. 18-22.)

IV. <u>Plaintiff's Subjective Complaints</u>

Plaintiff argues that the ALJ failed to articulate clear and convincing reasons for rejecting Plaintiff's testimony concerning her functional limitations.

Plaintiff testified that she was thirty-eight years old, had completed eighth grade, and could read and write a little but could not read a newspaper and could only read basic, little words; she did not know addition and subtraction. Plaintiff could not work because of her diabetes, which caused problems with kidneys and infections and slowed healing. Further, her abscess and infections on her toes, which were contagious, prevented her from working; her PTSD resulted from a rape with physical injury in 1998. (A.R. 587, 591-92.)

A podiatrist had told Plaintiff a couple of months before the hearing that she was at high risk for limb loss; it related to her feet. (A.R. 592.) Plaintiff testified that her toes were infected and had not healed; "they" wanted to amputate two of her toes right now and wanted to send her to a specialist; she was awaiting authorization; she did not know who the specialist was, but it was being set up by Dr. Fox, whose office was at Brundage Medical, and who had sent Plaintiff to Brenda Barnes, who in turn had authored a report regarding abscesses in Plaintiff's left great toe. Plaintiff had suffered the abscesses for about three years, and she had them on both feet and was taking antibiotics for them. (A.R. 592-94.) Plaintiff testified that she went barefooted because shoes caused pain to her toes. (A.R. 613.) She

wore open sandals. (A.R. 613.) When she was arrested about a month before the hearing, she was wearing shoes. (A.R. 613.)

Plaintiff testified she could walk ten for minutes and not even the distance of a block before she felt she needed to stop; she could stand for about twenty-two minutes before she felt she needed to sit; she could sit with no problem; she could carry ten pounds; she could not tell the difference between hot and cold with her hands or feet; and she sometimes had a problem with breathing, but it was not a major problem. (A.R. 594-59.) Plaintiff also testified that consistent with Dr. Haq's opinion, Plaintiff could not sit in one position for more than an hour, stand for more than ten to fifteen minutes due to low back pain, or walk for more than half a block. (A.R. 612.) Plaintiff had problems with her kidneys and had pain in her knees at a level of nine on a scale of one to ten; she took medications and massaged her feet; her medications caused her to be tired and sleepy, and she constantly lay down during the day and elevated her legs pursuant to the instructions of a former doctor, Dr. Brown, two years before. (A.R. 596-97.) Plaintiff had problems bending from the waist; she could not really kneel, stoop, or squat without a problem. (A.R. 597.) She walked as Dr. Brown had directed, but it would cause her legs to hurt, and she would return home. (A.R. 607-08.) She was unable to work because of the pain in her toes and feet; her hands cramped up as if they had arthritis, hurt really bad, and required massage. (A.R. 604-05.)

Plaintiff smoked a pack of cigarettes every two weeks; she did not drink. (A.R. 608.)

A normal day involved staying home, washing dishes,

1  vacuuming, and cooking, but she would get tired and then sit and
2  not complete her tasks; she went shopping with her brother, but
3  she would lean on the shopping cart when she tired. (A.R. 598-
4  99.) She would drop things because she did not feel the things
5  that she held; she went to church and movies; she walked in a big
6  yard. (A.R. 599-600.)

7      Plaintiff testified that her condition had worsened since
8  her previous hearing and denial of benefits in 2000. (A.R. 602-
9  03.) She had had a problem with drugs a couple of years before
10 but had stopped taking them; she had been jailed for a concealed
11 weapon, and she had drugs on her that day that were given to her
12 by another, and she was in jail twenty-six days and was on
13 probation and parole at the time of the hearing; she took drug
14 tests and had been clean. (A.R. 603-04.) However, Plaintiff also
15 testified that the previous month when she went in for a drug
16 test, her officer or agent gave her an extension because
17 Plaintiff did not have the money. (A.R. 608-09.) She admitted
18 having been off drugs for two years, then having gone back on
19 drugs ("Meth") the day she was arrested, which was November
20 fourth, but she realized she had made a mistake and did not want
21 drugs. (A.R. 608, 611.) However, it further appeared that
22 Plaintiff's  charge of possessing a pistol or a knife had not yet
23 been adjudicated at the time of the hearing. (A.R. 609-11.)

24     Plaintiff believed her blood sugars had been running 200 to
25 300 despite her having taken her medications as prescribed; she
26 had numbness in her hands and feet. (A.R. 604-05.)

27     The ALJ left the record open for two weeks for submission of
28 documentation regarding amputation of Plaintiff's toe or toes.

1 (A.R. 612-14.)

2      The court in <u>Orn v. Astrue</u>, 495 F.3d 625, 635 (9th Cir.

3 2007), summarized the pertinent standards for evaluating the

4 sufficiency of an ALJ's reasoning in rejecting a claimant's

5 subjective complaints:

> An ALJ is not "required to believe every
> allegation of disabling pain" or other non-exertional
> impairment. See <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th
> Cir.1989). However, to discredit a claimant's testimony
> when a medical impairment has been established, the ALJ
> must provide " 'specific, cogent reasons for the
> disbelief.' " <u>Morgan</u>, 169 F.3d at 599 (quoting <u>Lester</u>,
> 81 F.3d at 834). The ALJ must "cit[e] the reasons why
> the [claimant's] testimony is unpersuasive." <u>Id.</u> Where,
> as here, the ALJ did not find "affirmative evidence"
> that the claimant was a malingerer, those "reasons for
> rejecting the claimant's testimony must be clear and
> convincing." <u>Id.</u>
>      Social Security Administration rulings specify the
> proper bases for rejection of a claimant's testimony.
> See S.S.R. 02-1p (Cum. Ed.2002), available at Policy
> Interpretation Ruling Titles II and XVI: Evaluation of
> Obesity, 67 Fed.Reg. 57,859-02 (Sept. 12, 2002); S.S.R.
> 96-7p (Cum. Ed.1996), available at 61 Fed.Reg.
> 34,483-01 (July 2, 1996). An ALJ's decision to reject a
> claimant's testimony cannot be supported by reasons
> that do not comport with the agency's rules. See 67
> Fed.Reg. at 57860 ("Although Social Security Rulings do
> not have the same force and effect as the statute or
> regulations, they are binding on all components of the
> Social Security Administration, ... and are to be
> relied upon as precedents in adjudicating cases."); see
> <u>Daniels v. Apfel</u>, 154 F.3d 1129, 1131 (10th Cir.1998)
> (concluding that ALJ's decision at step three of the
> disability determination was contrary to agency
> regulations and rulings and therefore warranted
> remand). Factors that an ALJ may consider in weighing a
> claimant's credibility include reputation for
> truthfulness, inconsistencies in testimony or between
> testimony and conduct, daily activities, and
> "unexplained, or inadequately explained, failure to
> seek treatment or follow a prescribed course of
> treatment." <u>Fair</u>, 885 F.2d at 603; see also <u>Thomas</u>, 278
> F.3d at 958-59.

26      The factors to be considered in weighing credibility are set

27 forth in the regulations and pertinent Social Security rulings.

28 They include the claimant's daily activities; the location,

duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the symptoms; treatment, other than medication, the person receives or has received for relief of the symptoms; any measures other than treatment the claimant uses or has used to relieve the symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929; S.S.R. 96-7p.

With respect to the course of analysis directed by the regulations, the ALJ is first obligated to consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). Once it is determined that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then evaluate the intensity and persistence of the symptoms to determine how the symptoms limit the capacity for work. §§ 404.1529(b), (c); 416.929(b), (c). The ALJ will consider all available evidence. To the extent that the claimant's symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, the symptoms will be determined to diminish the claimant's capacity for basic work activities. §§ 404.1529(c)(4); 416.929(c)(4). A claimant's statements will not be rejected solely because unsubstantiated by the available objective medical evidence. §§ 404.1529(c)(2); 416.929(c)(2).

Further, the pertinent Social Security Ruling provides in part that an ALJ has an obligation to articulate the reasons supporting the analysis:

> ... When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

S.S.R. 96-7p at 4.

Here, the ALJ stated that in determining Plaintiff's RFC, he had considered the expert opinions as well as all symptoms and the extent to which the symptoms could reasonably be accepted with the objective medical evidence and other evidence. (A.R. 20.) The ALJ stated that although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's statements about the intensity, duration, and limiting effects of such symptoms were not entirely credible. (A.R. 20.)

The ALJ noted the objective medical evidence that

Plaintiff's toes had been injured and infected, and the injuries had healed slowly due to her diabetes. However, the ALJ concluded that the injuries occurred because Plaintiff was non-compliant with medical instructions to wear shoes. (A.R. 20.) The ALJ noted that there was a statement in the record by one of Plaintiff's doctors stating that Plaintiff was at a high risk of limb loss due to her non-compliance with treating her diabetes mellitus and instructions to wear shoes to protect her feet; she repeatedly went outside without shoes. (Id.)

Substantial evidence supported the ALJ's reasoning. On October 13, 2005, Dr. Brenda K. Barnes, D.P.M., examined Plaintiff at Dr. Fox's referral; Plaintiff's foot ulcers had resolved, and Barnes concluded that Plaintiff had a swollen, stiff third left toe, likely due to injury; and an abscess on the great left toe, which was mild, and was due to being barefoot; Plaintiff had reported that she was barefoot "a lot." (A.R. 572.) The plan for treatment included diabetic education. Barnes stated that Plaintiff was at high risk for limb loss, concluding, "Barefoot increases risk but seems unlikely to change." (Id.)

Further, the treatment and progress notes from Plaintiff's treating sources reflect poor control of Plaintiff's diabetes with poor compliance on Plaintiff's part. (A.R. 410-411 [Dr. Atanassova at Kern Medical Center in November 2002 at a follow-up after a hospital admission to treat a vaginal abscess referred Plaintiff to a diabetes management program, and she recommended activity as tolerated, specifically, walking about one to two miles a day with a goal of losing about five pounds in the next month], 503 [glucose reading of 274 in January 2003, with normal

being 70-110], 493 [poor control with instructions on the critical need to follow care plan in August 2003], 487 [glucose of 225 in March 2005], 570 [poor control in October 2005], 574 [blood sugar of 217 in September 2005 on a day on which Plaintiff had not taken her diabetes medication, with a plan for her to continue her medications], 570-71 [poor control and poor compliance in October 2005, including drinking regular soda, with a plan that included a referral concerning nutrition and stressing diet].)

In order to obtain benefits, a claimant must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the person has an acceptable reason for failing to follow the prescribed treatment. 20 C.F.R. § 416.930. One factor that an ALJ may consider in weighing a claimant's credibility is an unexplained or inadequately explained failure to seek treatment or follow a prescribed or directed course of treatment that can improve the impairment to the extent that the person will not be disabled and thus restore the ability to work. Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007). This reasoning is appropriate where the symptom or phenomenon is such that a person's normal reaction to it is to seek relief, and where modern medicine is often successful in providing relief. One such example is a failure to seek relief from disabling pain because a person's normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief. Orn, 495 F.3d at 638. However, where because of the nature of the impairment the stimulus to seek relief is less pronounced, and where medical treatment is very

13

1 unlikely to be successful, it makes little sense to conclude from
2 a failure to seek or to follow recommendations regarding
3 treatment that the complaint was unjustified or exaggerated. <u>Orn</u>
4 at p. 638.

5     Here, Plaintiff claimed that her feet were so painful that
6 she could not wear shoes. Further, Barnes had specifically
7 directed that Plaintiff wear shoes, and Barnes had identified
8 injury from walking barefoot as the cause of painful toe
9 abscesses. It was reasonable for the ALJ to infer that Plaintiff
10 had failed to explain adequately her failure to wear shoes
11 because despite some foot discomfort, a reasonable person would
12 follow medical advice to avoid infection, as well as associated
13 risks of increased pain from unresolved infections and even
14 eventual amputation, by wearing shoes. There were no
15 circumstances that rendered wearing shoes impossible or
16 impracticable; Plaintiff admitted that she had been wearing shoes
17 when she had gone out with others and had been arrested about a
18 month before the hearing. Further, it clearly appears that
19 Plaintiff's diabetes treatment plan for controlling her blood
20 sugar included long-standing components of medication and
21 nutrition, and yet Plaintiff was not compliant.

22     The ALJ also referred to specific medical evidence,
23 including the opinion of the state agency physician, that the
24 normal physical exam of Plaintiff by the internal medicine
25 consultative examiner did not support the extreme limitations
26 assessed by the consulting examiner. (A.R. 20.) The ALJ further
27 noted the consistency of the medical evidence with the opinion of
28 the state agency medical consultant. (A.R. 20.)

1    The ALJ thus evaluated Plaintiff's complaints in light of
2 the body of the evidence before the ALJ and concluded that
3 Plaintiff's complaints were not supported by the objective
4 medical evidence. Although the inconsistency of objective
5 findings with subjective claims may not be the sole reason for
6 rejecting subjective complaints of pain, Light v. Chater, 119
7 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be
8 considered with others, Moisa v. Barnhart, 367 F.3d 882, 885 (9th
9 Cir. 2004); Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir.
10 1999).

11    The ALJ's assessment of the objective medical evidence was
12 supported by substantial evidence in the record.

13    On March 23, 2004, internal medicine consultant Dr. Ayesha
14 Haq examined Plaintiff, who weighed 264 pounds and was sixty-nine
15 inches tall, complained of low back pain all of the time, feeling
16 weak and tired and short of breath with exertion, uncontrolled
17 blood sugars in the range of 300 to 400, and a history of skin
18 boils that became infected. (A.R. 331, 331-33.) The clinical
19 findings included low back pain, tenderness to palpation over the
20 paraspinous muscles in the lumbar region, no tenderness to
21 palpation over the spine, no joint deformities or inflammation,
22 no muscle atrophy or vesiculation, a range of motion in shoulder,
23 knees, and ankles that was within normal limits, motor strength
24 was 5/5 bilaterally but range of motion in the hips was
25 decreased, sensory exam was normal, and the exam was difficult
26 due to obesity. There was no chest pain or palpitations,
27 coughing, or wheezing. The diagnosis was diabetes mellitus type
28 2, morbid obesity, low back pain secondary to lumbar strain, most

likely secondary to obesity. (Id.) The recommendation was better
control of blood glucose with optimization of medical management,
and weight loss and exercise versus gastric bypass surgery to
lose weight. (A.R. 333.) Dr. Haq's medical source statement was
that Plaintiff was unable to sit for more than one hour or stand
for more than ten to fifteen minutes due to low back pain;
physical findings that might explain that were morbid obesity and
lumbar strain; Plaintiff stated that she was unable to walk for
more than half a block for the same reason, i.e., low back pain.
(A.R. 333.)

Thus, the only negative objective findings were pain and
tenderness in the spinal area and reduced range of motion of the
hips, with unspecified difficulty due to obesity. Although the
doctor opined that Plaintiff's lumbar strain and obesity could
("might") explain her claimed limitations in sitting, standing,
and walking, the record reflects that the vast majority of
findings were normal.

Further, the ALJ's reliance on the opinion of state agency
physician Dr. John T. Bonner, dated April 3, 2004, which was
reviewed and affirmed by another state agency physician in August
2004, was supported by the record. (A.R. 452-62.) The physicians
opined that Plaintiff's diabetes and low back pain left Plaintiff
with a RFC to perform light work with only occasional stooping
and without climbing ladders, ropes, or scaffolds due to her
obesity and low back pain. (A.R. 453-54.) The doctors expressly
concluded that the degree of subjective complaints was not
supported by the  medical evidence of record, and that the
exertional limitations imposed by the consulting examiner were

extreme and not supported by the medical evidence of record.
(A.R. 457-58.) Thus, substantial evidence supported the ALJ's
reasoning that the findings upon examination were so mild that
they did not support the extreme limitations recommended by Dr.
Haq.

The ALJ further stated that there was no evidence to support
Plaintiff's allegation that the doctors wanted to amputate her
toes. (A.R. 20.) Although the ALJ gave Plaintiff time to submit
records reflecting a plan or opinion concerning amputation of
Plaintiff's toes, no such records were submitted. Thus,
substantial evidence supports the ALJ's finding.

The ALJ's consideration of the conflict between Plaintiff's
testimony and the medical record was appropriate, and his reasons
were clear and convincing in force. Included in the factors that
an ALJ may consider in weighing a claimant's credibility are the
claimant's reputation for truthfulness; inconsistencies either in
the claimant's testimony or between the claimant's testimony and
the claimant's conduct, daily activities, or work record; and
testimony from physicians and third parties concerning the
nature, severity, and effect of the symptoms of which the
claimant complains. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.
2004); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).
The ALJ may consider whether the Plaintiff's testimony is
believable or not. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th
Cir. 1999).

The ALJ also noted that Plaintiff's testimony about her main
problem being her toes was inconsistent with the opinion of the
internal medicine consultative examiner that reflected that

Plaintiff's main problem was her back pain. (A.R. 20.) The record
bears out the ALJ's conclusion. At the hearing Plaintiff stated
that her shortness of breath was not a major problem; the only
pain she complained of was pain in her feet or toes, knees, and
from abscesses; her only mention of back problems was with
postural movements; it was diabetes and abscesses and/or
infections that primarily kept Plaintiff from working at the time
of the hearing. (A.R. 595, 597, 605.) Yet Plaintiff had reported
constant low back pain and feeling weak and tired and short of
breath to Dr. Haq. (A.R. 331.) Further, Dr. Haq opined that
Plaintiff's limitations on standing, sitting, and walking "might"
be explained by her obesity and lumbar strain (A.R. 333);
however, Plaintiff had no significant complaints of back pain or
shortness of breath at the hearing. The record thus reflects a
disappearance of the very symptom that the consulting examiner
pointed to as possibly explanatory of the extreme limitations he
assessed. (A.R. 333.)

    Plaintiff asserts that the passage of about a year and nine
months between the March 2004 examination by Dr. Haq and the
hearing held on December 2005 rendered the inconsistency of
complaints reasonable due to a changing medical situation, and
thus the ALJ should not have considered the inconsistency at all
with respect to Plaintiff's credibility.

    There was a straightforward inconsistency in Plaintiff's
subjective complaints as reported over time. The change in
subjective symptoms was significant because it reflected
resolution of symptoms that had been claimed to have been
disabling but that resolved and apparently were not a significant

18

1   problem at the time of the hearing and decision.

2       Further, the ALJ considered the effect of the inconsistency
3   in light of the medical evidence of record. The resolution of
4   Plaintiff's spinal symptoms removed the apparent basis for the
5   consulting examiner's opinion of extreme functional limitations,
6   which had apparently been based on lumbar strain. (A.R. 333.)
7   Under the circumstances, the Court rejects Plaintiff's contention
8   that the ALJ's reliance on this factor was erroneous.

9       Accordingly, the Court concludes that the ALJ cited clear
10  and convincing reasons for rejecting Plaintiff's subjective
11  complaints regarding the intensity, duration, and limiting
12  effects of her symptoms, and that the ALJ's reasons were properly
13  supported by the record and sufficiently specific to allow this
14  Court to conclude that the ALJ rejected the claimant's testimony
15  on permissible grounds and did not arbitrarily discredit
16  Plaintiff's testimony.

17      V. Expert Opinions

18      Plaintiff challenges the ALJ's rejection of Dr. Haq's
19  assessed limitations on sitting, standing, and walking. Plaintiff
20  asserts that the ALJ had to explain expressly why Plaintiff's
21  obesity and low back pain would not support the limitations that
22  Dr. Haq set forth.

23      An ALJ may disregard a treating physician's opinion that is
24  controverted by other opinions only by setting forth specific,
25  legitimate reasons for doing so that are based on substantial
26  evidence in the record. Rodriquez v. Bowen, 876 F.2d 759, 762 (9th
27  Cir. 1989). This burden is met by stating a detailed and thorough
28  summary of the facts and conflicting clinical evidence, stating

19

1 the interpretation of the evidence, and making findings. Cotton

2 v. Bowen, 799 F.2d 1403, 1408 (9th Cir 1986). The opinion of an

3 examining physician is entitled to greater weight than the

4 opinion of a nonexamining physician. Lester v. Chater, 81 F.3d

5 821, 830 (9th Cir. 1995). The uncontradicted opinion of an

6 examining physician may be rejected only if the Commissioner

7 provides clear and convincing reasons for rejecting it. Id.;

8 Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001). An

9 ALJ can reject the opinion of an examining physician and adopt

10 the contradictory opinion of a non-examining physician only for

11 specific and legitimate reasons that are supported by substantial

12 evidence in the record. Moore v. Commissioner of Social Security

13 Administration, 278 F.3d 920, 925 (9th Cir. 2002) (quoting Lester

14 v. Chater, 81 F.3d at 830-31)).

15     Here, the ALJ reviewed the medical evidence in the course of

16 evaluating whether or not Plaintiff's impairments met or

17 medically equaled a listed impairment. (A.R. 18-19.) As mentioned

18 above, the ALJ noted the inconsistency between Plaintiff's

19 present symptoms and Dr. Haq's opinion that Plaintiff's main

20 problem was her back pain due to lumbar strain, most likely

21 secondary to obesity. (A.R. 20.) The ALJ then stated in pertinent

22 part:

23       As for the opinion evidence, the opinion of the internal
      medicine consultative examiner was considered, but

24       rejected (see Exhibit 1F, p. 3). The state agency medical
      consultant was correct in finding that the normal

25       physical examination of the claimant did not support
      the extreme limitations as opined by the internal medicine

26       consultative examiner (Exhibit 4F, p. 14).

27       The state agency medical consultant determined the
      claimant was limited to a range of light work activity

28       with no more than occasional stooping or climbing of

> ladders, ropes, and scaffolding (Exhibit 4F, pp. 9-14).
> The claimant has provided no objective medical evidence
> or objective medical opinion to rebut the opinion of the
> state agency medical consultant.

It therefore appears that the ALJ reviewed the pertinent medical evidence and set forth his reasons for rejecting the opinion of the consultative internal medicine examiner. The ALJ's reasoning was specific and legitimate. It is permissible to discount an expert opinion because the findings made in connection with it are inconsistent with the opinion. A conclusional opinion that is unsubstantiated by relevant medical documentation may be rejected. See Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995). It is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion. Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ's findings concerning the state agency physician's opinion were supported by the record because the state agency physician himself opined that the essentially normal physical examination of Plaintiff did not support the extreme functional limitations assessed by Dr. Haq. Here, the ALJ had not only the inconsistency of the findings on examination themselves, which are summarized hereinabove, but also had the express opinion of the state agency physician to the effect that the restrictive opinion was not supported by findings.

It was not necessary in this instance for the ALJ to explain further his conclusion concerning the evidence. The consulting

1  examiner's opinion was not supported by his findings on

2  examination, which were essentially normal; another physician had

3  expressly so opined; and the examiner's rejected opinion was

4  rendered in connection with subjective symptoms which were

5  largely inconsistent with the subjective complaints the Plaintiff

6  stated at the time of the hearing and decision. The ALJ's

7  reasoning was sufficiently clear to permit this Court to conclude

8  that he stated specific and legitimate reasons for rejecting the

9  opinion of the consulting examiner, and that those reasons were

10 supported by substantial evidence in the record.

11     In the circumstances of this case, it was not necessary for

12 the ALJ to explain why obesity and low back pain would not impose

13 the precise limitations set forth by Dr. Haq. It is established

14 that obesity, and even obesity to the level of morbid obesity,

15 does not correlate with any specific degree of functional

16 limitation; although obesity may contribute to or exacerbate

17 other impairments, such as impairments of the musculoskeletal

18 body systems, this does not mean that persons with obesity

19 necessarily have any such impairments, or that obesity itself is

20 necessarily a severe impairment. Soc. Sec. Ruling 02-1p pp. 2-4.

21     As the ALJ concluded, there was no objective medical

22 evidence or objective medical opinion to rebut the opinion of the

23 state agency medical consultant. (A.R. 20.) It was Plaintiff's

24 burden to establish disability, and Plaintiff did not meet her

25 burden.

26     Based on the foregoing, the Court concludes that the ALJ's

27 decision was supported by substantial evidence in the record as a

28 whole and was based on the application of correct legal

1  standards.

2      Accordingly, the Court AFFIRMS the administrative decision

3  of the Defendant Commissioner of Social Security and DENIES

4  Plaintiff's Social Security complaint.

5      The Clerk of the Court IS DIRECTED to enter judgment for

6  Defendant Michael J. Astrue, Commissioner of Social Security,

7  and against Plaintiff Esmeralda Vidal.

8  IT IS SO ORDERED.

9  **Dated:    February 7, 2008             /s/ Sandra M. Snyder**
                                  UNITED STATES MAGISTRATE JUDGE